Filed 5/7/14  Migdal v. JP Morgan Chase Bank CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARK MIGDAL,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JPMORGAN CHASE BANK et al.,<br><br>Defendants and Respondents. | H038797<br>(Santa Clara County<br>Super. Ct. No. CV203756) |

In this action for declaratory and injunctive relief, plaintiff Mark Migdal seeks to prevent the sale of his home through a nonjudicial foreclosure sale.  Migdal appeals from a judgment of dismissal entered after the trial court sustained without leave to amend a demurrer to his second amended complaint against defendants JPMorgan Chase Bank, N.A. (JPMorgan) and California Reconveyance Company (CRC) (collectively defendants).  Migdal contends the trial court erred by sustaining defendants' demurrer because he adequately alleged that defendants have no interest in the property, and thus no right to foreclose, and that there were irregularities in the foreclosure documents.  We conclude that Migdal has shown no error and will affirm the judgment.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

In 2002, Migdal obtained a residential loan in connection with real property

---

[1] Because this matter comes to us following a judgment sustaining a demurrer without leave to amend, we assume the truth of the material facts properly pleaded in Migdal's complaints.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

located in Mountain View, California.  The loan was secured by a deed of trust encumbering the property, which was recorded with the Santa Clara County Recorder's Office on May 28, 2002.  The deed of trust identifies Washington Mutual Bank (WaMu) as the lender and beneficiary, CRC as the trustee, and Migdal as the borrower.

On September 25, 2008, JPMorgan entered into a purchase and assumption agreement with the Federal Deposit Insurance Corporation (FDIC), acting as receiver for WaMu ("the P & A Agreement").  Pursuant to the P & A Agreement, JPMorgan purchased "all right, title, and interest of the [FDIC] in and to all of [WaMu's] assets." As discussed below, the parties' dispute whether Migdal's deed of trust was among the assets JPMorgan purchased.

Migdal "made the regularly scheduled payments on the loan[] until December of 2008."  CRC recorded a notice of default and election to sell under deed of trust on April 27, 2009.  Thereafter, JPMorgan contacted Migdal about a possible loan modification agreement under the federal Home Affordable Mortgage Program (HAMP).  Migdal's application for loan modification was later denied.

CRC filed a notice of trustee's sale on November 18, 2009, which announced CRC's intention to sell the property at public auction on December 10, 2009.  The signature on the notice is that of Deborah Brignac as vice president of CRC.  That sale never took place.  In April 2010, Migdal received a notice of trustee's sale, informing him that his property was going to be nonjudicially foreclosed upon by CRC as trustee.[2] CRC recorded a second notice of trustee's sale on June 10, 2011, indicating that the property would be sold at a nonjudicial foreclosure sale on July 1, 2011.  As discussed below, that sale initially was enjoined.  To our knowledge, Migdal's property still has not

_____

[2] Although it is not clear from the record or the parties' briefs, the notice Migdal alleges he received in April 2010 may have been the November 18, 2009 notice of trustee's sale.

2

been sold at a nonjudicial foreclosure sale.

### A. *The Complaint*, *TRO*, *and Denial of a Preliminary Injunction*

Migdal filed suit against JPMorgan and CRC on June 24, 2011, asserting claims for breach of contract and unfair business practices in violation of the unfair competition act (Bus. & Prof. Code, § 17200 et seq. (UCL)), and seeking injunctive relief and an accounting. The complaint alleged that JPMorgan had obtained an assignment of Migdal's deed of trust, originally held by WaMu, as a result of the P & A Agreement. It further alleged that JPMorgan's loan modification program was a "sham" designed to obtain benefits from the federal and California governments in connection with HAMP.

Also on June 24, 2011, Migdal filed an ex parte application for a temporary restraining order preventing defendants from carrying out the trustee's sale of the property scheduled for July 1, 2011. The court granted the temporary restraining order (TRO), required Migdal to post a $2,500 bond, and ordered defendants to show cause why a preliminary injunction should not issue.

In response to the order to show cause, defendants opposed the entry of a preliminary injunction. In support of that opposition, defendants requested that the trial court take judicial notice of copies of (1) the deed of trust, (2) the November 18, 2009 notice of trustee's sale, and (3) the June 10, 2011 notice of trustee's sale. In reply, Migdal argued for the first time that JPMorgan was *not* entitled to enforce the deed of trust because the deed of trust had been sold by WaMu to a third party before the P & A Agreement was executed, such that JPMorgan had no interest in the deed of trust. Migdal submitted the declaration of James Macklin in support of his reply. Macklin declared that he had performed a search of the recorded deed of trust against Migdal's property and that the records "reflect that [WaMu] sold this note and deed of trust as part of the sale of securities such that [WaMu] [is] no longer the beneficiary on the deed of trust." Macklin further declared that "the record is void as to whether or not [WaMu] or JP Morgan Chase Bank were the beneficiaries on the note or deed of trust. The original

3

loan contract was previously sold by [WaMu]." Migdal did not provide the court with copies of the underlying records Macklin reviewed.

Following a November 10, 2011 hearing, the court denied Migdal's motion for a preliminary injunction and dissolved the temporary restraining order. Migdal filed a motion for reconsideration, which the court denied on February 17, 2012.

**B. *The First Amended Complaint and Defendants' Demurrer***

Migdal filed a first amended complaint (FAC) on February 1, 2012. In contrast to the initial complaint, Migdal now alleged that WaMu sold his deed of trust before JPMorgan entered into the P & A Agreement, such that his deed of trust was not purchased by JPMorgan. He alleged that CRC was not the trustee of the deed of trust and had no authority to initiate a foreclosure proceeding with respect to the property. Migdal further alleged that CRC had not given proper notice of default pursuant to Civil Code section 2924.

Migdal sought a declaration that JPMorgan was not entitled to enforce the deed of trust under Commercial Code section 3301 and that the bank had no right to pursue a foreclosure sale of the property. Migdal also sought to enjoin JPMorgan from selling the property and alleged causes of action for fraud and violations of the UCL against the bank. As to CRC, Migdal sought an injunction barring it from selling the property.

Defendants' demurrer to the FAC was sustained with leave to amend as to the declaratory and injunctive relief claim only and sustained without leave to amend the fraud and UCL claims against JPMorgan.

**C. *The Second Amended Complaint and Defendants' Demurrer***

Migdal filed a second amended complaint (SAC) asserting a single claim for declaratory and injunctive relief against JPMorgan and CRC. As in the FAC, Migdal alleged that WaMu sold his deed of trust "as a part of [a] sale of securities . . . to independent investors" prior to the 2008 P & A Agreement between the FDIC and JPMorgan, such that his deed of trust "was not part of the assets transferred to

4

[JPMorgan]." The SAC sought a declaration that JPMorgan has "no beneficial interest as a person entitled to enforce a deed of trust under California Commercial Code § 3301" and that "[o]n this basis" it has "no right to pursue a foreclosure sale of the property or to enforce the deed of trust." The SAC also sought to enjoin JPMorgan from selling the property on the theory that it "has no beneficial interest in the property under California Commercial Code § 3301."

Migdal alleged that CRC was not the trustee on the deed of trust. Migdal also alleged that Deborah Brignac's signature on the notice of trustee's sale CRC filed on November 18, 2009, was forged by a robo-signer. In support of that allegation, Migdal attached to the SAC portions of documents bearing dissimilar "Deborah Brignac" signatures on behalf of various companies (including CRC and JPMorgan). Migdal also alleged that "the person signing the notice of default had no personal knowledge of the facts stated therein" and that "[t]he amount stated as due was inaccurate and in excess of the amount owed." The SAC sought a declaration that CRC has "no beneficial interest as a person entitled to enforce a deed of trust under California Commercial Code § 3301" and, that "[o]n this basis," it has "no right to pursue a foreclosure sale of the property or to enforce the deed of trust." The SAC also sought to enjoin CRC from selling the property on the ground that it had not properly given notice of default and notice of trustee's sale as required by Civil Code section 2924.

In an order dated August 8, 2012, the trial court sustained defendants' demurrer to the SAC on two grounds. First, the court held that Migdal's requests for declaratory and injunctive relief failed because they were premised on Commercial Code section 3301, which has no application to nonjudicial foreclosures. Second, the court disregarded the SAC's allegation that JPMorgan did not have an interest in Migdal's deed of trust based on the sham pleading doctrine or, alternatively, because "judicially noticeable documents

5

demonstrate that the SAC lacks merit."[3]  The court did not separately address the alleged irregularities in the notice of default and notice of trustee's sale.

The court entered judgment against Migdal on August 20, 2012.  Migdal timely appealed on September 21, 2012.

## II.    DISCUSSION

### A.    *The Standard of Review*

We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law.  (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)  Because a demurrer tests only the legal sufficiency of the pleading, the facts alleged in the pleading are deemed to be true.  (*Berg & Berg Enterprises*, *LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034.)  We do not review the validity of the trial court's reasoning, and therefore will affirm its ruling if it was correct on any theory.  (*Ibid*.)  Nor are we "limited to plaintiff[']s theory of recovery in testing the sufficiency of [its] complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory."  (*Barquis v. Merchants Collection Assn*. (1972) 7 Cal.3d 94, 103 (*Barquis*).)

"Where a demurrer is sustained without leave to amend, [we] must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, [we] will conclude that the trial court abused its discretion by denying the plaintiff leave to amend.  [Citation.]  The plaintiff bears the burden of establishing that it could have amended the complaint to cure the defect."  (*Berg & Berg*

---

[3] In connection with the demurrer to the SAC, the court took judicial notice of copies of (1) the deed of trust; (2) the P & A Agreement; (3) an affidavit of the FDIC recorded in the state of Washington stating that "JPMorgan Chase certain of the assets, including all of the loans and all loan commitments, of Washington Mutual"; (4) a notice of default and election to sell under deed of trust filed on April 27, 2009; and (5) the November 18, 2009 and June 10, 2011 notices of trustee's sale.

*Enterprises*, *LLC v. Boyle*, *supra*, 178 Cal.App.4th at p. 1035.)

**B.** **The SAC Properly Alleges That JPMorgan Did Not Obtain Assignment of the Deed of Trust From WaMu**

Before we can assess the sufficiency of the SAC, we must determine what facts it properly alleges. Therefore, we begin by considering whether the trial court erred in disregarding the allegation that JPMorgan never obtained an assignment of Migdal's deed of trust. The court refused to consider that allegation based on the sham pleading doctrine and unspecified "judicially noticeable documents." Neither justification has merit.

"Under the sham pleading doctrine, plaintiffs are precluded from amending complaints to omit harmful allegations, *without explanation*, from previous complaints to avoid attacks raised in demurrers or motions for summary judgment." (*Deveny v. Entropin*, *Inc*. (2006) 139 Cal.App.4th 408, 425 (*Deveny*), italics added.) "If a party files an amended complaint and attempts to avoid the defects of the original complaint by either omitting facts which made the previous complaint defective or by adding facts inconsistent with those of previous pleadings, the court may take judicial notice of prior pleadings and may disregard any inconsistent allegations." (*Colapinto v. County of Riverside* (1991) 230 Cal.App.3d 147, 151.) "The sham pleading doctrine is not ' "intended to prevent honest complainants from correcting erroneous allegations . . . or to prevent correction of ambiguous facts." ' " (*Deveny*, *supra*, at p. 426.) "Instead, it is intended to enable courts ' "to prevent an abuse of process." ' " (*Ibid*.) Therefore, "the party who made the pleadings must be allowed to explain the changes." (*Ibid*.)

There can be no dispute that the SAC omits an allegation from the initial complaint that would be fatal to Migdal's current theory--namely, that WaMu assigned the deed of trust to JPMorgan. Instead, the SAC alleges the opposite--that WaMu did *not* assign the deed of trust to JPMorgan, but rather sold it to an unidentified third party. However, the sham pleading doctrine does not apply here because Migdal offered a

7

plausible explanation for the amendment, i.e., that it was not until defendants opposed his request for a preliminary injunction that he learned they did not have any documents directly connecting his deed of trust to JPMorgan.[4] (*Deveny*, *supra*, 139 Cal.App.4th at p. 426 ["the sham pleading doctrine does not apply because [plaintiff's attorney] offered a plausible explanation for the amendment, i.e., that he had erred in relying on [certain data] as the basis for the complaint because further discovery and consultation with experts had shown that such data was inconclusive."].)

Nor do the documents defendants submitted for judicial notice justify disregarding the allegation. "[F]acts alleged, which are contrary to those facts of which judicial notice is taken, cannot be regarded as true." (*Arnold v. Universal Oil Land Co.* (1941) 45 Cal.App.2d 522, 529.) But nothing in the judicially noticed documents contradicts the allegation that WaMu sold Migdal's deed of trust before the P & A Agreement was executed, as the documents do not show whether WaMu still owned the deed of trust at the time the P & A Agreement was executed.

### C. *California's Nonjudicial Foreclosure Scheme*

In California, the financing or refinancing of real property generally is accomplished by the use of a deed of trust. (*Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 125.) Under a deed of trust, the borrower conveys nominal title to property to an intermediary, the "trustee," who holds that title as security for repayment of the loan to the lender, or "beneficiary." (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 334.) "When the [borrower] defaults on the debt secured by the deed of trust, the beneficiary may declare a default and make a demand on the trustee to

---

[4] Contrary to the trial court's suggestion, the record does not indicate that Migdal's counsel should be blamed for initially alleging, on information and belief, that JPMorgan acquired an interest in Migdal's deed of trust pursuant to the P & A Agreement. The existence (or nonexistence, as the case may be) of documents establishing the chain of title to the deed of trust is knowledge that lies exclusively with the defendants.

commence foreclosure." (*Ibid*.)

The California Legislature has established a comprehensive set of legislative procedures governing such nonjudicial foreclosures. (See *Debrunner v. Deutsche Bank National Trust Co*. (2012) 204 Cal.App.4th 433, 440 (*Debrunner*); Civ. Code, §§ 2924-2924k.) " 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' " (*Debrunner*, *supra*, at p. 440.) Civil Code section 2924, subdivision (a)(1), broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate nonjudicial foreclosure by recording a notice of default and election to sell.

### D. *Migdal Failed to State a Claim Based on Defendants' Alleged Lack of Authority to Foreclose*

The primary theory underlying Migdal's sole claim against defendants is that they have no beneficial interest in the property under section 3301 of the Commercial Code, which governs the enforceability of negotiable instruments. But, given the comprehensive nature of California's nonjudicial foreclosure scheme, this court has refused to apply Commercial Code section 3301 to nonjudicial foreclosure under deeds of trust. (*Debrunner*, *supra*, 204 Cal.App.4th at p. 441 ["we are not convinced that the cited sections of the California Uniform Commercial Code (particularly § 3301) displace the detailed, specific, and comprehensive set of legislative procedures the Legislature has established for nonjudicial foreclosures"].) Numerous federal courts applying California law have done the same. (See *Spence v. Wells Fargo Bank*, *N.A*. (E.D.Cal., May 3, 2011) (No. 1:10-cv-02057-IWW-GSA) [2012 U.S. Dist. LEXIS 32838]; *Padayachi v. IndyMac Bank* (N.D.Cal., Oct. 28, 2010) (No. C 09-5545 JF (PVT)) [2010 U.S. Dist. LEXIS 120963]; *Quintero Family Trust v. OneWest Bank*, *F.S.B*. (S.D. Cal., Jan. 27, 2010) (No. 09-CV-1561-IEG (WVG)) [2010 U.S. Dist. LEXIS 6618]; *Gaitan v. Mortgage Electronic*

9

*Registration Systems* (C.D. Cal., Oct. 5, 2009) (No. ED CV-09-1009 VAP MANX) [2009 U.S. Dist. LEXIS 97117].)  In view of the foregoing authority, we agree with the trial court that Migdal cannot state an actionable claim based on Commercial Code section 3301.

However, we are not "limited to plaintiff[']s theory of recovery in testing the sufficiency of [his] complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory." (*Barquis*, *supra*, 7 Cal.3d at p. 103.)  Accordingly, we must consider whether the SAC states a claim for declaratory relief on the issue of whether defendants have the authority to initiate nonjudicial foreclosure under any other theory.

California courts have held that a debtor has no right to pursue preemptive judicial action, such as a claim for declaratory relief, to challenge the authority of a foreclosing party to initiate and pursue foreclosure.  (See *Gomes v. Countrywide Home Loans*, *Inc*. (2011) 192 Cal.App.4th 1149, 1155 (*Gomes*) [California's nonjudicial foreclosure scheme does not "provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized"]; *Jenkins v. JPMorgan Chase Bank*, *N.A.* (2013) 216 Cal.App.4th 497, 513 [refusing to find implied authority for a preemptive judicial action to determine whether a defendant has the authority to initiate nonjudicial foreclosure, as doing so "would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature"]; *Robinson v. Countrywide Home Loans*, *Inc*. (2011) 199 Cal.App.4th 42, 46 ["the statutory scheme ([Civ. Code,] §§ 2924-2924k) does not provide for a preemptive suit challenging standing"].)  Case law suggests "a potential exception, however, where there is 'a *specific factual basis* for alleging that the foreclosure was not initiated by the correct party.' " (*Gates v. LPP Mortg*., *Inc*. (C.D. Cal., Dec. 30, 2013) (CV 13-8737 DSF PLAX) [2013 U.S. Dist. LEXIS 183638 at p. 6]; see also *Gomes*, *supra*, at p. 1156 [noting that plaintiff "has not asserted *any* factual basis to suspect that [defendant] lacks authority to proceed with the

foreclosure"].)  Indeed in *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1094 the court concluded that there exists " 'a valid cause of action for wrongful foreclosure' " where the plaintiff "allege[s] facts that show the defendant who invoked the power of sale was not the true beneficiary."

Here, Migdal arguably alleges sufficient facts showing JPMorgan is not the beneficiary of the deed of trust.  (See *Barrionuevo v. Chase Bank, N.A.* (N.D. Cal. 2012) 885 F.Supp.2d 964, 973-974 [denying JPMorgan's motion to dismiss wrongful foreclosure claim where plaintiff alleged that original lender WaMu had sold deed of trust at issue prior to JPMorgan's 2008 acquisition of WaMu's assets].)  But even assuming Migdal's allegations are sufficient, he still failed to state a viable wrongful foreclosure cause of action because he did not allege "facts showing that [he] suffered prejudice as a result of any lack of authority of the parties participating in the foreclosure process."  (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85 [affirming order sustaining demurrer without leave to amend where plaintiff showed no prejudice arising from defendants' alleged lack of authority to foreclose].)  Any transfer of the deed of trust did not change Migdal's obligations, and, like the plaintiffs in *Siliga*, he "do[es] not dispute that [he is] in default" of those obligations.  (*Ibid.*)  Despite having been in default for over four years, Migdal continues to occupy the property.  Migdal does not allege that defendants interfered with his payments under the loan or that the proper entity "would have refrained from foreclosure in these circumstances."  (*Ibid.*; see also *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507-1508 [affirming order sustaining demurrer to wrongful foreclosure action without leave to amend where plaintiffs were not prejudiced].)

In his appellate briefs, Migdal argues that he has established prejudice by alleging the threat of losing his home through nonjudicial foreclosure.  As Migdal points out, federal courts have held that " 'the threat of foreclosure by the wrong party would

11

certainly be sufficient to constitute prejudice to the homeowner because there is no power of sale without a valid notice of default.' " (*Mena v. JP Morgan Chase Bank, N.A.* (N.D. Cal., Sept. 7, 2012) (No. 12-1257 PSG) [2012 U.S. Dist. LEXIS 128585 at pp. 25-26], quoting *Tamburri v. Suntrust Mortg., Inc.* (N.D. Cal. Dec. 15, 2011) (No. C-11-2899 EMC) [2011 U.S. Dist. LEXIS 144442].) But " 'federal decisional authority is neither binding nor controlling in matters involving state law.' " (*Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 55.) While we likewise "are not bound by precedents created by other appellate courts," we find the reasoning set forth in *Siliga* more persuasive than that of the federal decisions on which Migdal relies. (*California Clean Energy Committee v. City of San Jose* (2013) 220 Cal.App.4th 1325, 1345, fn. 8.) Accordingly, we conclude Migdal has not shown prejudice, and his cause of action must fail.[5] (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 (*Fontenot*) ["[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate [that] the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests."].)

### E. Migdal Fails to State a Claim Based on Alleged Procedural Irregularities in the Notice of Default and Notice of Trustee's Sale

As a separate ground for his cause of action for declaratory relief, Migdal asserted certain irregularities in the notice of default and the first notice of trustee's sale. With

---

[5] At oral argument, Migdal claimed that if JPMorgan is allowed to foreclose on the property, he would lose the protections of the anti-deficiency statute if the actual owner, whoever that may be, subsequently sought to enforce the note against him. Even if this were an accurate statement of the law, we decline to consider it. Migdal made no such allegation in his pleadings below, nor did he make this assertion to the trial court in either of the hearings on defendants' demurrers. It was not raised in his appellate briefs. This court may not "rewrite the complaint based on new facts raised for the first time on appeal. While we may consider on appeal whether the trial court abused its discretion in not granting leave to amend, we look only to the [operative complaint] and any new facts raised in the trial court during the hearing on the demurrer." (*Herrera v. Federal National Mortgage Assn., supra*, 205 Cal.App.4th at p. 1506.)

12

respect to the notice of default, Migdal alleged that "the person signing the notice of default had no personal knowledge of the facts stated therein" and "[t]he amount stated as due was inaccurate." He also alleged that the first notice of trustee's sale was forged by a robo-signer. None of these allegations is sufficient to state a claim for wrongful foreclosure.

Migdal's "personal knowledge" allegation appears to be based on Civil Code section 2923.5, subdivision (b), which requires that a notice of default "include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of 'borrower' pursuant to subdivision (c) of Section 2920.5." But "[Civil Code] [s]ection 2923.5 does not require that the compliance statement be signed by a person with personal knowledge." (*Ghuman v. Wells Fargo Bank, N.A.* (E.D. Cal., Feb. 13, 2013) (1:12-CV-00902-AWI) [2013 U.S. Dist. LEXIS 19647 at p. 24]; see also *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 233 ["The way [Civil Code] section 2923.5 is set up, too many people are necessarily involved in the process for any one person to likely be in the position where he or she could swear that all three requirements of the declaration required by subdivision (b) were met."].) Nor, in our research, have we found any other provision imposing a personal knowledge requirement. Accordingly, Migdal's allegation that the notice of default was signed by someone lacking personal knowledge of its contents is insufficient to state a claim for wrongful foreclosure.

Migdal's allegation that the notice of default stated the incorrect amount also fails to state a claim because the notice of default "need not . . . state the amounts which are in default; it need only describe the nature of the breach." (*Middlebrook-Anderson Co. v. Southwest Sav. & Loan Assn.* (1971) 18 Cal.App.3d 1023, 1038, citing Civ. Code, § 2924.) Consequently, the notice of default is neither statutorily deficient, nor invalid. Moreover, assuming the amount listed in the notice of default was incorrect, Migdal

alleges no resulting prejudice. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 271.) Migdal does not deny that he defaulted, nor does he allege that he could or would have cured the default by paying the lesser amount he did owe.

Migdal's robo-signing allegations fail to state a claim because, again, Migdal fails to allege facts showing that he suffered prejudice as a result of any lack of authority on the part of the party signing the first notice of trustee's sale. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 94 ["courts have rejected claims of deficient notice [of sale] where no prejudice was suffered as a result of the procedural irregularity"].) Significantly, it is undisputed that the foreclosure sale noticed in that first notice of trustee's sale never took place. And a second notice of trustee's sale, the validity of which Migdal does not contest, has since been issued. Under these circumstances, we cannot imagine how Migdal could have been prejudiced by any deficiencies in the first notice of trustee's sale.

Finally, we conclude the trial court did not abuse its discretion in denying Migdal leave to amend as Migdal has failed to meet his burden of demonstrating a reasonable possibility that an amendment could cure the pleading defects we have identified.

**III. DISPOSITION**

The judgment is affirmed.  Defendants JPMorgan Chase Bank and California Reconveyance Company shall recover their costs on appeal.

                                                             _____

                                                              Premo, J.

WE CONCUR:

_____
              Rushing, P.J.

_____
              Márquez, J.