Filed 5/30/23; Certified for Publication 6/23/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| RICHARD LAUCKHART et al., | C095490 |
| Plaintiffs and Appellants, | (Super. Ct. No. CV-2020-1489) |
| v. | |
| EL MACERO HOMEOWNERS ASSOCIATION, | |
| Defendant and Respondent. | |

The Davis-Stirling Common Interest Development Act (Civ. Code, § 4000 et seq., the Davis-Stirling Act) regulates so-called common interest developments—types of residential real estate developments in which exclusive rights of use or ownership of land are coupled with real property rights owned or enjoyed in common with others. (Advising California Common Interest Communities (2d ed Cal. CEB) § 1.1.) (Statutory section citations that follow are found in the Civil Code unless otherwise stated.) Such common interest developments, among other requirements, include common areas and

are managed by an association that has the power to levy and enforce assessments to pay costs and in which membership is mandatory.  (§§ 4201, 4800, 5600.)

Plaintiffs Richard Lauckhart and Sharon and Ronald Baumgartner as trustees of the Baumgartner Family Revocable Trust brought this action to prevent defendant El Macero Homeowners Association, a California nonprofit mutual benefit corporation (the Association), from acquiring property as common area and subjecting the plaintiffs' residential subdivision to the requirements of the Davis-Stirling Act, including the levy of assessments to maintain the common area.  In their second amended complaint, plaintiffs sought to cancel due to fraud a recorded declaration of covenants, conditions, and restrictions (CC&Rs) under which the Association acts, enjoin the Association from accepting real property as common area or using assessments to fund its maintenance, and receive a judicial declaration that the declaration of CC&Rs is void and that the subdivision is not subject to the Davis-Stirling Act.

The trial court sustained a general demurrer to the second amended complaint without leave to amend.  It found the cancelation cause of action was time barred and did not plead fraud with particularity, the Association's acquisition of the land was protected under the business judgment rule and could not be enjoined, and the request for declaratory relief was derivative of the other dismissed causes of action.

We affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

Because this appeal is from a judgment dismissing an action after sustaining a general demurrer without leave to amend, we accept as true material facts pleaded in the complaint and matters which may be judicially noticed.  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  The operative complaint is the second amended complaint.

2

The El Macero subdivision was constructed in Yolo County (County) near the City of Davis during the 1960's and 1970's. The subdivision was developed in five phases, referred to as units. The developer, Mace Properties, Inc. (Mace Properties), recorded a declaration of CC&Rs for each unit (the original CC&Rs). In 1964, homeowners organized a corporation known as the El Macero Improvement Association to support the development.

While developing unit four, Mace Properties dedicated the unit's Lot A to the County, which would utilize a well existing on the property to serve homes in the subdivision. Eventually, the well ran dry and the County abandoned it. The County did not use Lot A for any particular purpose afterward.

In 1995, an informal group of homeowners created a new declaration of CC&Rs that would apply to all the subdivision units collectively. The declaration is entitled the First Restated Declaration of Covenants, Conditions, and Restrictions of El Macero Homeowners Association. It was recorded with the County Recorder on August 15, 1995. We refer to it as the 1995 Declaration. It announced that the homeowners had approved renaming the Improvement Association as the El Macero Homeowners' Association, and that all owners were members of the Association. It also authorized the Association to acquire real property and levy assessments on homeowners. At the time, there was no common area in the subdivision.

Claudia Salquist, one of the informal group members, recorded the 1995 Declaration and the signatures of the homeowners who consented to it with the County Recorder. Plaintiffs allege the recorded signatures were wholly undiscoverable by plaintiffs or any other owner. Salquist refused repeated requests by plaintiffs to provide copies of the signatures and materials related to the 1995 Declaration. Neither the original CC&Rs nor the 1995 Declaration indicated that subdivision homeowners owned any area in common.

3

Within the three years prior to the commencement of this action, plaintiffs learned that the signatures for the 1995 Declaration allegedly were obtained fraudulently, forged, and then fraudulently recorded to create the Association, its board, and annual assessments. The informal group of homeowners who collected signatures in favor of the 1995 Declaration double counted signatures, forged signatures, did not provide a ballot, misinformed owners about the purpose for their signatures, and acquired insufficient signatures to amend the original CC&Rs.

Plaintiffs did not learn about these actions until 2019, when plaintiff Lauckhart was appointed to the Association's CC&R Committee and for the first time obtained access to historical documents which Salquist had refused to provide. The historical documents indicated there were over 117 instances where a homeowner signed twice on the 1995 Declaration's initiative, four instances where an owner signed three times on the initiative, 109 instances where owners were not provided an opportunity to vote on the initiative, no ballot was included for the vote, and "the Mace companies" did not approve the 1995 Declaration as required by the original CC&Rs. Plaintiffs contend that without a proper membership vote on the 1995 Declaration, the original CC&Rs for each of the five subdivision phases remain in effect.

In 2020, the County abandoned the dedication of Lot A and conveyed the property to the long-defunct Mace Properties. The registered agent of Mace Properties conveyed Lot A to the Association. The deed states it is a common area grant deed and that Lot A is common area located within a planned development.

The original CC&Rs and the 1995 Declaration do not grant an interest in any common areas to members of the Association. Plaintiffs allege the Association owns no common areas, its membership does not jointly own any common areas, and neither the original CC&Rs nor the 1995 Declaration impose common area maintenance obligations on the Association. From these points, plaintiffs allege that Lot A is not a common area

4

as defined in the Davis-Stirling Act, and thus the Association cannot use assessment funds collected from Association members to maintain or insure Lot A.

Plaintiffs brought this action on October 29, 2020. The trial court sustained a demurrer to the first amended complaint in 2021. In the second amended complaint, plaintiffs allege three causes of action. The first cause of action seeks cancellation of the 1995 Declaration pursuant to section 3412 because it was approved and recorded illegally and fraudulently. In the second cause of action, plaintiffs allege the Association breached the original CC&Rs, the 1995 Declaration, and the Association's articles of incorporation (the governing documents) by acquiring Lot A. Plaintiffs seek injunctive relief to bar the Association from accepting Lot A or using assessments to fund any maintenance or insurance for Lot A. In the third cause of action, plaintiffs seek a declaratory judgment that the 1995 Declaration is void and has no effect, the Association's acquisition of Lot A violated the 1995 Declaration and the articles of incorporation, and that the subdivision is not a common interest development subject to the Davis-Stirling Act.

The trial court sustained the Association's demurrer to the second amended complaint without leave to amend. It took judicial notice of the original CC&Rs, the 1995 Declaration, the Association's articles of incorporation, plaintiffs' deeds to their properties, and the deed transferring Lot A to the Association. It determined the cancellation cause of action was barred by a four-year statute of limitations. The recording of the 1995 Declaration gave plaintiffs constructive notice of any fraud committed in developing and recording the 1995 Declaration, and it defeated plaintiff's claim of delayed discovery. The court also determined plaintiffs did not plead fraud with sufficient particularity to establish a cause of action for cancelling the 1995 Declaration based on fraud.

On the second cause of action, violation of the governing documents by acquiring Lot A, the trial court ruled that the Association's decision to acquire the property was entitled to a presumption of good faith under the business judgment rule and a rule

5

granting judicial deference to discretionary decisions made by directors of community association boards. Plaintiffs had not pleaded sufficient facts of fraud or bad faith to overcome the presumption of good faith.

The trial court sustained the demurrer to the third cause of action for declaratory relief because the cause was wholly derivative of the first and second causes of action.

Additionally, the trial court denied plaintiffs leave to amend. When it sustained the demurrer to the first amended complaint, the court advised plaintiffs of the complaint's specific deficiencies. Yet plaintiffs failed to amend the complaint to state facts sufficient to constitute any cause of action against the Association. The court entered judgment of dismissal with prejudice against plaintiffs.

Subsequently, the trial court awarded attorney fees in the amount of $51,188.50 to the Association pursuant to section 1717. The court found that the 1995 Declaration contained an attorney fee provision that was broad enough to encompass all causes of action contained in the second amended complaint.

DISCUSSION

I

*Standard of Review*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.) Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Speegle v. Board of Fire Underwriters* (1946) 29 Cal.2d 34, 42.) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (See *Hill v. Miller* (1966) 64 Cal.2d 757, 759.) And when it is sustained without leave to

amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Kilgore v. Younger* (1982) 30 Cal.3d 770, 781, *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.) The burden of proving such reasonable possibility is squarely on the plaintiff. ([*Ibid*.])" (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)

II

*Cancellation Cause of Action*

Plaintiffs contend they pleaded sufficient facts to state a cause of action for cancelling the 1995 Declaration. They claim the complaint shows that the statute of limitations did not begin to run on the cause of action until 2019 when the historical records were first made available to them and they discovered the fraud behind the 1995 Declaration's adoption and recording. They assert they pleaded sufficient facts to satisfy the discovery rule. The complaint alleges when the facts were discovered, what facts were discovered, and why they could not have been discovered earlier.

Plaintiffs further argue it was improper for the trial court to find on demurrer that they had constructive notice of their cause of action from the 1995 Declaration's recording. Plaintiffs contend that whether the recording of the 1995 Declaration and the signatures in support of it gave them sufficient notice of the existence of a cause of action and whether they were sufficiently diligent in investigating the cause of action are questions of fact that cannot be decided on demurrer.

Plaintiffs also argue that if their allegations of fraud were not sufficiently particular, the complaint should have survived demurrer because less specificity is required when the facts lie more in the defendant's knowledge. The Association kept and maintained the records that disclosed the fraud, and subdivision homeowners did not have access to those records.

7

Plaintiffs assert that the signatures recorded in support of and as part of the 1995 Declaration mean nothing on demurrer. The County Recorder does not verify the authenticity of the signatures or the propriety of the voting process.

A.    Statute of limitations

To prevail on a claim to cancel an instrument, a plaintiff must allege and prove (1) the instrument is void or voidable; and (2) he or she has a reasonable apprehension of serious injury including pecuniary loss or the prejudicial alteration of their position. (§ 3412; *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1193-1194.) An instrument may be void or voidable due to fraud in its enactment. (*Costa Serena Owners Coalition v. Costa Serena Architectural Com.* (2009) 175 Cal.App.4th 1175, 1193.)

Plaintiffs assert their cancellation cause of action was subject to the three-year statute of Code of Civil Procedure section 338 for actions involving fraud, and that their cause of action did not accrue until they discovered in 2019 the fraud committed in adopting and recording the 1995 Declaration. If plaintiffs are correct, their cause of action was timely, as they filed their complaint on October 29, 2020, well within the three-year period from the alleged date of discovery.

Normally, resolving a statute of limitations defense is a question of fact. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 (*Fox*).) However, on appeal from the sustaining of a demurrer, we must assume plaintiffs' allegations to be true. (*Id.* at p. 811.) As a result, the application of the statute of limitations is based on undisputed facts, and the issue becomes one of law. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.) "We must take the allegations of the operative complaint as true and consider whether the facts alleged establish [plaintiffs'] claim is barred as a matter of law." (*Ibid.*)

Statutes of limitation begin to run once a cause of action accrues. (*Fox, supra,* 35 Cal.4th at p. 806.) Generally, a cause of action accrues "at 'the time when the cause

8

of action is complete with all of its elements.' [Citations.]" (*Id*. at pp. 806-807.) An exception to the general rule is the discovery rule, "which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Id*. at p. 807.)

The discovery rule delays accrual until the plaintiff has, or should have had, notice of facts sufficient to put a prudent person on inquiry regarding his or her claim. (*Fox, supra*, 35 Cal.4th at p. 807.) In a cause of action for fraud, the statute of limitations begins to run " 'after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry . . . .' [Citation.]" (*Cleveland v. Internet Specialties West, Inc.* (2009) 171 Cal.App.4th 24, 31.) "[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Fox*, at p. 808.)

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.] In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' [Citation.]" (*Fox, supra*, 35 Cal.4th at p. 808.)

Plaintiffs' complaint shows on its face that their claim for cancellation is barred unless they have the benefit of the discovery rule. The alleged fraud happened in 1995, and plaintiffs filed their action in 2020. To survive demurrer, the complaint must plead facts showing the time and manner plaintiffs discovered the fraud and their inability to have discovered the fraud earlier despite reasonable diligence.

9

The complaint alleges that the fraud occurred in 1995 when the informal group of homeowners gathered signatures in favor of the 1995 Declaration and when they recorded it. Plaintiffs allege they learned in 2019 for the first time that those who gathered the signatures in support of the 1995 Declaration did so fraudulently. They double counted signatures, forged signatures, failed to provide a ballot as provided, misinformed owners about the purpose for the signatures, and acquired insufficient signatures to amend the original CC&Rs. Plaintiffs learned these facts when plaintiff Lauckhart was appointed to an Association committee in 2019 and was granted access to historical documents that Salquist had concealed and refused to provide. Plaintiffs did not have access to those documents prior to Lauckhart's appointment and, as a result, were unable to discover the fraud until 2019. The recorded signatures were undiscoverable. Salquist had refused "repeated requests" to provide copies of the signatures to plaintiffs.

Despite plaintiffs' allegations, the recording of the 1995 Declaration put plaintiffs on notice of some of the defects they allege. Their allegation that they could not have discovered the signatures is incorrect, as the signatures were recorded. And a recorded written instrument that affects title to real property provides constructive notice of its contents. (*Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 355.)

The documents judicially noticed show that the original CC&Rs authorized amending their terms upon the written consent of the declarant and the owners of two-thirds in area of the lots within each unit. The recorded 1995 Declaration states that the owners of two-thirds in area of the lots within each unit agreed by signed petition to amend and restate the original CC&Rs, all in accordance with the procedures for amendment set forth in the original CC&Rs.

As part of the 1995 Declaration, Salquist, as president of the Association, and the Association's secretary certified under penalty of perjury that the 1995 Declaration was approved by the percentage of owners the original CC&Rs required to be amended.

10

Signatures of persons who consented to the 1995 Declaration that were attached as exhibits and recorded were deemed to be a part of and incorporated by reference into the 1995 Declaration. The consent forms stated that the person signing the form consented to amending and restating the original CC&Rs pursuant to the terms and provisions of the 1995 Declaration.

By reviewing the recorded 1995 Declaration and its signatures and the original CC&Rs as part of an investigation, plaintiffs could have learned whether enough owners consented in writing to the 1995 Declaration, whether any of those signatures were counted more than once, and whether the original declarant consented to the 1995 Declaration in writing. Plaintiffs also would have learned whether enough owners were provided with consent forms and whether the consent form misrepresented to owners the purpose of their signatures.

Plaintiffs allege that the historical documents they obtained in 2019 disclosed over 117 instances where a homeowner signed the consent form twice, four instances where a homeowner signed it three times, 109 instances where owners were not provided an opportunity to vote, no ballot was included in the vote, the Mace companies did not consent, and that Salquist misrepresented that she was the president of the Association.

But a review of the original CC&Rs and the recorded 1995 Declaration, along with the knowledge available from an investigation of the number of homeowners and the size of their lots in 1995, would have found whether the 1995 Declaration was properly approved despite these facts. Thus, to the extent plaintiff's cancelation cause of action for fraud is based on the alleged facts, the language of the consent form, and whether enough owners consented in writing to the 1995 Declaration, it is time barred.

The discovery rule, however, " 'imputes notice only of those facts that are naturally and reasonably connected with the fact known, and of which the known fact or facts can be said to furnish a clue.' " (*Cleveland v. Internet Specialties West, Inc., supra*, 171 Cal.App.4th at p. 33, quoting *Sime v. Malouf* (1949) 95 Cal.App.2d 82, 106-107.)

11

Plaintiffs could not likely have known from the recorded 1995 Declaration whether any of the signatures on the consent forms were forged or whether any of the persons who solicited signatures misinformed the owners of the purpose for their signatures.

We must accept as true plaintiffs' allegations that they first acquired knowledge about the forgeries and the misrepresentations when Lauckhart was appointed to an Association committee in 2019 and thereby gained access to previously undisclosed historical documents. The plaintiffs also alleged that their requests notwithstanding, the possessor of those documents refused to make them available. These allegations sufficiently plead facts and not just conclusions for purposes of the discovery rule. They show when and how plaintiffs discovered their claims based on forgery and misrepresentation and their inability to have discovered those claims earlier despite reasonable diligence. Thus, they establish as against a demurrer that Code of Civil Procedure section 338's three-year statute of limitations began running in 2019 for plaintiffs' fraud claims based on forgery and misrepresentation, and the action as to those matters was timely filed in 2020. Ultimately, this issue is one of fact that we cannot resolve on demurrer.

B.    Pleading fraud with particularity

We now turn to determine whether the portion of the cancellation cause of action that was pleaded timely survives demurrer for pleading facts of fraud with particularity. The gravamen of plaintiffs' cause of action for cancellation is that the Association committed the tort of deceit by intentional misrepresentation: the Association forged signatures in support of the 1995 Declaration and misrepresented to owners their signatures' purpose.

To plead deceit based on intentional misrepresentation, plaintiffs were required to allege with particularity as many as seven essential factual elements: "(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was

false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." (*Manderville v. PCG&S Group, Inc.* (2007) 146 Cal.App.4th 1486, 1498, italics omitted.)

Fraud must be pleaded with particularity. General and conclusory allegations are inadequate. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184.) "[B]ecause allegations of fraud involve a serious attack on character, fairness requires that the defendant receive the fullest possible details of the charge to prepare a defense." (5 Witkin, California Procedure (6th ed. 2023) Pleading, § 707.) " ' "This particularity requirement necessitates pleading *facts* which 'show how, when, where, to whom, and by what means the representations were tendered.' " ' [Citation.]" (*Small*, at p. 184, original italics.)

The complaint does not plead fraud with particularity. It does not name the persons who committed the fraud. It refers to them only as an informal group of homeowners. The complaint does not identify any signature that was forged, nor does it allege what the actual misrepresentations were or how they were tendered. It does not identify the persons against whom the fraud was committed, nor does it specify what damages plaintiffs suffered from relying on the 1995 Declaration.

However, "[l]ess specificity is required when 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy,' [citation]; '[e]ven under the strict rules of common law pleading, one of the canons was that less particularity is required when the facts lie more in the knowledge of the opposite party . . . .' [Citation.]" (*Committee On Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 217, superseded by statute

13

on another ground, as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227.)

Plaintiffs argue that less specificity was required in their fraud allegations. They allege the Association possesses the information containing the fraud. The Association maintained the records which disclosed the fraud and was aware of the fraud. Owners such as plaintiffs did not have access to those records until 2019.

Yet, despite gaining access to these records and having filed three complaints in this action, plaintiffs are still unable to allege with particularity any facts supporting their conclusory allegations that members of the Association forged signatures or misrepresented the purpose of the signatures. Indeed, the Baumgartners, whose signatures appear on the recorded consent forms, have not alleged that their signatures were forged or that any misrepresentations were made to them. Lauckhart purchased his lot in 2000, so he cannot allege receipt of or detrimental reliance on any misrepresentation allegedly made when signatures were solicited and the Declaration was recorded in 1995.

Because plaintiffs are unable to allege facts supporting their claims of forgery and misrepresentation, and because they have had three opportunities to do so, they are unable to plead fraud with particularity showing the 1995 Declaration is void or voidable, and thus they cannot state a cause of action for cancellation of the instrument.

For the same reasons, the trial court did not abuse its discretion in denying plaintiffs leave to file a third amended complaint for cancellation. There is no reasonable possibility at this late juncture that the complaint can be cured by amendment. Plaintiffs bore the burden of demonstrating how they can amend the complaint to state a cause of action. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) In their opening brief, plaintiffs do not show how the complaint can be amended to state a cause of action for cancellation.

14

In their reply brief, plaintiffs argue for the first time that they should be allowed to amend the complaint to allege the Association, in converting the subdivision into a common interest development by recording the 1995 Declaration, did not comply with the Department of Real Estate's consumer protection statutes or file a required public report, allegedly a continuing wrong that impacts plaintiffs "on a repeating and daily basis." We do not consider points raised for the first time in a reply brief unless good cause is shown for not presenting them timely. (*Balboa Ins. Co. v. Aguirre* (1983) 149 Cal.App.3d 1002, 1010.) Good cause for the delay not having been shown, the contention is forfeited.

III

*Acquisition of Lot A Under the Governing Documents*

Plaintiffs next contend the trial court erred in sustaining the demurrer against their second cause of action seeking injunctive relief for breach of the governing documents. In that cause of action, plaintiffs allege that the articles of incorporation allow the Association to acquire real property only "when necessary for the uses and purposes of the corporation." The complaint alleges that acquisition of Lot A was not necessary to the Association's uses and purposes because neither the original CC&Rs nor the 1995 Declaration grant Association members any beneficial interest in Lot A, and neither document provides a mechanism to maintain or insure Lot A. Plaintiffs contend these issues are questions of fact that cannot be resolved on demurrer.

Plaintiffs also allege in the second cause of action that the Association's acquisition of Lot A is not entitled to the protections of the business judgment rule because the acquisition was not authorized under the Association's governing documents. Plaintiffs claim that disputed issues of fact exist which affect whether the business judgment rule applies in this case and the directors' decisions are entitled to judicial deference. Those issues include whether the governing documents authorized the

15

Association to acquire Lot A; whether the acquisition was the result of fraud, bad faith, or overreaching; and whether the Association's directors followed the prerequisites for the business judgment rule to apply.

" 'The common law business judgment rule has two components—one which immunizes [corporate] directors from personal liability if they act in accordance with its requirements, and another which insulates from court intervention those management decisions which are made by directors in good faith in what the directors believe is the organization's best interest.' (*Lee v. Interinsurance Exchange* (1996) 50 Cal.App.4th 694, 714, citing 2 Marsh & Finkle, Marsh's Cal. Corporation Law (3d ed., 1996 supp.) § 11.3, pp. 796–797.) A hallmark of the business judgment rule is that, when the rule's requirements are met, a court will not substitute its judgment for that of the corporation's board of directors." (*Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249, 257.) Because no Association directors were named as defendants in this action, only the second component of the business judgment rule may apply here, insulating board decisions made in good faith.

"The rule establishes a presumption that directors' decisions are based on sound business judgment, and it prohibits courts from interfering in business decisions made by the directors in good faith and in the absence of a conflict of interest." (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1045 (*Boyle*).) A court will not substitute its judgment for the board of director's judgment if the latter's decision can be attributed to any rational business purpose. (*Ibid*.)

An exception to the business judgment rule's presumption exists "in 'circumstances which inherently raise an inference of conflict of interest' and the rule 'does not shield actions taken without reasonable inquiry, with improper motives, or as a result of a conflict of interest.' [Citations.] But a plaintiff must allege sufficient facts to establish these exceptions. To do so, more is needed than 'conclusory allegations of improper motives and conflict of interest. . . .' In most cases, 'the presumption created

16

by the business judgment rule can be rebutted only by affirmative allegations of facts which, if proven, would establish fraud, bad faith, overreaching or an unreasonable failure to investigate material facts. [Citation.] Interference with the discretion of directors is not warranted in doubtful cases.' [Citation.]

"[T]he failure to sufficiently plead facts to rebut the business judgment rule or establish its exceptions may be raised on demurrer, as whether sufficient facts have been so pleaded is a question of law. [Citations.]" (*Boyle, supra*, 178 Cal.App.4th at pp. 1045-1046.)

We have already sustained the demurrer to the extent the complaint sought to plead fraud in the adoption and recording of the 1995 Declaration. The complaint also alleges no facts that the Association acquired Lot A due to fraud, bad faith, or an unreasonable failure to investigate material facts. Instead, the complaint alleges overreach. The complaint asserts that the business judgment rule does not apply because the Association was not authorized to acquire Lot A, and Lot A was not necessary for the Association's uses and purposes because the 1995 Declaration does not grant a beneficial interest in Lot A to the homeowners or provide a mechanism to maintain or insure Lot A.

These allegations are insufficient as a matter of law to rebut the business judgment rule. The governing documents expressly grant the Association the authority plaintiffs allege the Association does not have. The 1995 Declaration grants the Association the power and obligation to conduct all business affairs of common interest to all homeowners. It grants the Association power to acquire by any manner, own, improve, and maintain real property in connection with the affairs of the Association. It also grants the Association power to convey, transfer, dedicate for public use, or otherwise dispose of real property in connection with the Association's affairs.

The 1995 Declaration also grants the Association authority to levy assessments to promote the recreation, health, safety, and welfare of the homeowners and the performance of Association duties. This includes authority to levy special assessments

17

when existing funds are inadequate to defray or meet the common expenses of the Association for any reason, including unexpected maintenance and repairs. The Association also has authority to enforce its assessments by legal action or by creating and foreclosing on a lien.

The 1995 Declaration further grants the Association all powers granted to a California nonprofit mutual benefit corporation subject to any limitations set forth in the governing documents. Under state statute, those powers include the power to assume obligations and enter contracts. (Corp. Code, § 7140, subd. (i).)

The Association's articles of incorporation, recorded in 1964, state the Association was formed to promote the development of and generally improve the lots in the subdivision's unit one "and such areas adjacent thereto as may hereafter be added." This would include the development's unit four and Lot A. The articles grant the Association the authority to purchase, hold, and use real property necessary for the Association's uses and purposes, and to sell, lease, deed in trust, or dispose of the same. The articles also grant the Association the authority to make and enter contracts for the Association's purposes, and to do all actions necessary or expedient for the administration of the Association's affairs and attainment of its purposes.

As shown, the governing documents vest the Association with power and means to acquire, insure, and maintain Lot A. Contrary to plaintiffs' allegation, that the 1995 Declaration does not grant a beneficial interest in Lot A to the homeowners does not mean Lot A was not necessary for the Association's uses and purposes. The Association is authorized to promote the development of and improve the lots in the subdivision, including Lot A, and to take all actions necessary for the attainment of that purpose. Moreover, although the governing documents do not grant owners a beneficial interest in Lot A, because the Association owns Lot A, the owner of each separate interest has an appurtenant easement for ingress, egress, and support in the common area as necessary for the use and enjoyment of the separate interests. (See *Moss Development Co. v. Geary*

18

(1974) 41 Cal.App.3d 1, 5 [owners have beneficial use and enjoyment of common area owned and maintained by the association]; 8 Miller & Starr, Cal. Real Estate (4th ed. 2022) Common Interest Developments, § 28:10.)

Because plaintiffs have not pleaded in three separate complaints specific facts alleging fraud, bad faith, overreaching, or an unreasonable failure to investigate material facts, they have not created an issue of fact concerning application of the business judgment rule. We thus presume as a matter of law that the decision by the Association's directors to acquire Lot A was based on sound business judgment and was necessary and useful for the Association's purposes, and we will not interfere in that decision. The trial court correctly sustained the demurrer to the second cause of action without leave to amend, and plaintiffs have not shown us how they could further amend.

IV

*Whether the Subdivision is a Common Interest Development*

Plaintiffs' third cause of action sought a declaration that the 1995 Declaration was void, the acquisition of Lot A contravened the original CC&Rs and the articles of incorporation, and that the subdivision is not a common interest development subject to the Davis Stirling Act.

The trial court sustained the demurrer against the third cause of action because the claim was wholly derivative of the first and second causes of action. The court also stated it did not need to address whether the Association or the subdivision was a common interest development.

Plaintiffs contend the trial court erred. They argue if the subdivision is not a common interest development because it has no common area or authority to levy assessments to maintain a common area, then the Association does not have authority to use assessments to maintain Lot A.

19

As discussed above, plaintiffs' not pleading fraud with particularity and judicially noticed facts establish that the 1995 Declaration is not void and the acquisition of Lot A did not violate the governing documents. Thus, to the extent the third cause of action seeks a declaration that the 1995 Declaration is void and that acquiring Lot A violated the governing documents, it is wholly derivative of the unsuccessful first and second causes of action, and the trial court properly sustained the demurrer against the third cause of action without leave to amend. (See *Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794, 800 [demurrer properly sustained against claim for declaratory relief which is "wholly derivative" of statutory claim stated without sufficient facts].)

Moreover, because the Association lawfully acquired Lot A as common area, plaintiffs' request for a declaration that the subdivision is not a common interest development is moot. When a development contains a common area, then the Davis-Stirling Act applies. (*Cheveldave v. Tri Palms Unified Owners Assn.* (2018) 27 Cal.App.5th 1202, 1214; § 4201.) Under the Davis-Stirling Act, a common interest development includes a "planned development." (§ 4100, subd. (c).) A "planned development," with exceptions not relevant here, is a real property development that has either or both of the following features: "(a) Common area that is owned either by an association or in common by the owners of the separate interests who possess appurtenant rights to the beneficial use and enjoyment of the common area. [¶] (b) Common area and an association that maintains the common area with the power to levy assessments that may become a lien upon the separate interests in accordance with" the Davis-Stirling Act. (§ 4175.)

For purposes of the act, an "association" includes a nonprofit corporation created for the purpose of managing a common interest development. (§ 4080.) The term "common area" refers to "the entire common interest development except the separate interests therein. The estate in the common area may be a fee, a life estate, an estate for years, or any combination of the foregoing." (§ 4095, subd. (a).) In a planned

20

development, the common area may also consist of "mutual or reciprocal easement rights appurtenant to the separate interests."  (§ 4095, subd. (b).)

The Davis-Stirling Act applies "and a common interest development is created whenever a separate interest coupled with an interest in the common area *or membership in the association* is, or has been, conveyed, provided all of the following are recorded:

"(a) A declaration.

"(b) A condominium plan, if any exists.

"(c) A final map or parcel map" if required.  (§ 4200, italics added.)

The Association and the subdivision qualify as an association and a common interest development, respectively, under the Davis-Stirling Act.  The Association is a nonprofit corporation that was created to manage the subdivision and in which all property owners are members.  The subdivision is a planned development; it has in Lot A a common area that is owned and maintained by the Association, and the Association has the power under the 1995 Declaration to levy assessments that may become a lien upon the separate properties in the subdivision.  As a result, plaintiffs' third cause of action is moot, and the trial court did not err in sustaining the demurrer to the cause of action without leave to amend.

V

*Attorney Fees*

Plaintiffs ask us to reverse the award of attorney fees to the Association solely on the ground that we should reverse the trial court's judgment.  Because we are not reversing, and because plaintiffs make no other arguments concerning the attorney fee award, we do not disturb it.

21

DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to the Association.  (Cal. Rules of Court, rule 8.278(a).)

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

HULL, J.

We concur:

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

ROBIE, Acting P. J.

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

DUARTE, J.

22

Filed 6/23/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| RICHARD LAUCKHART et al., | C095490 |
| Plaintiffs and Appellants, | (Super. Ct. No. CV-2020-1489) |
| v. | |
| EL MACERO HOMEOWNERS ASSOCIATION, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Yolo County, Samuel T. McAdam, Judge. Affirmed.

Thomas & Associates and Michael W. Thomas, for Plaintiffs and Appellants.

O'Toole Rogers, Nicholas Alexander Rogers and Aaron Anthony Hayes, for Defendant and Respondent.

1

THE COURT:

The opinion in the above-entitled matter filed on May 30, 2023, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered

BY THE COURT:

_____
ROBIE, Acting P. J.

_____
HULL, J.

_____
DUARTE, J.

2